1
2
3          UNITED STATES DISTRICT COURT
4          NORTHERN DISTRICT OF CALIFORNIA
5
6
7    LANCE VAN HOOK,
8                    Plaintiff,                    No. C 06-3148 PJH (PR)
9          v.                                      **ORDER GRANTING**
                                                   **DEFENDANTS' MOTIONS TO**
10   BEN CURRY, Warden (A), and JAMES              **STRIKE AND TO DISMISS**
     E. TILTON, Secretary of the CDCR,
11
                     Defendants.
12   _____/
13
14         This is a civil rights case filed pro se by a state prisoner.  Defendants have filed a
15   motion to dismiss and a motion to strike the "extrinsic evidence" contained in plaintiff's
16   opposition to the motion to dismiss.  Plaintiff has opposed the motion to dismiss, but has
17   not opposed the motion to strike.  For the reasons set out below, the court grants the
18   motions.
19                                    **BACKGROUND**
20         In his complaint plaintiff contends that a CDCR regulation which bans films which
21   have been given a Motion Picture Association of American rating of "R" violates his First
22   Amendment rights.[1]  The movies are paid for with money from the inmate welfare fund.
23                                     **DISCUSSION**
24   **A.    Motion to Strike**
25         Defendants move to strike the declaration (plaintiff calls it an "affidavit," but as it is
26   not notarized and is signed under penalty of perjury, it is actually a declaration) attached to
27
28         _____
           [1] The regulation bans films rated R or with a more restrictive rating, such as NC-17 or
     X, but plaintiff only challenges the ban on R-rated films.

the plaintiff's opposition to their motion to strike on grounds it contains assertions of fact which are not in the complaint and which thus cannot be considered in ruling on a motion to dismiss.

On a motion to dismiss review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested.  *Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  In addition, the court may take judicial notice of facts that are not subject to reasonable dispute.  *Id.* at 688 (discussing Fed. R. Evid. 201(b)).  Plaintiff has, however, attempted to add factual assertions which are not judicially noticeable by way of a declaration attached to his opposition to the motion to dismiss.  Because such assertions are irrelevant when considering a motion to dismiss, the motion to strike will be granted and the contents of the declaration will not be considered.

**B.     Motion to Dismiss**

> **1.       Failure to State a Claim**

One ground for defendants' motion to dismiss is that plaintiff has failed to state a claim.

> > **a.        Standard**

The court sets out above what may be considered in ruling on a motion to dismiss – the complaint and attachments and judicially-noticeable facts.  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party.  *Spreewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Id.*

In order to state a claim, the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.Civ.P. 8(a)(2).  "Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the .... claim is and the grounds upon which it rests.' " " *Erickson v.*

*Pardus*, 127 S.Ct. 2197, 2200 (2007) (citations omitted). Although in order to state a claim

a complaint "does not need detailed factual allegations, ... a plaintiff's obligation to provide

the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do.... Factual allegations

must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v.*

*Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). A complaint must proffer

"enough facts to state a claim for relief that is plausible on its face." *Id.* at 1986-87.[2] Pro se

pleadings must be construed liberally on a defendant's motion to dismiss for failure to state

a claim. *Ortez v. Washington County Oregon*, 88 F.3d 804, 807 (9th Cir. 1996).

**b.    Analysis**

Defendants contend that plaintiff has failed to state a claim because the regulation at

issue, Cal. Code Regs., tit. 15, § 3220.4(a)-(f), is constitutional on its face.[3] In summary,

---

[2] *Bell Atlantic Corp.* disapproved the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Conley* had stated "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. *Bell Atlantic Corp.* decided that "this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic Corp.*, 127 S.Ct. at 1969.

[3] Section 3220.4(a)-(f) reads:

§ 3220.4. Movies/Videos for Inmate Viewing.

(a) Only movies/videos approved by the institution head or his/her designee (reviewer) may be scheduled for viewing by inmates.

(b) Only those movies/videos which have been given a rating of "G," "PG," or "PG-13" by the Motion Picture Association of America (MPAA) or that have been placed on the department's discretionary showing list may be considered for viewing. Movies/videos which have been given a rating of other than "G," "PG," or "PG-13" by the Motion Picture Association of America shall not be approved for general inmate viewing. Regardless of their rating or listing, movies/videos which, in the opinion of the reviewer, glorify violence or sex, or are inflammatory to the climate of the facility shall not be shown.

(c) The selection or exclusion of a movie/video by a facility may be challenged by members of the public by writing to the director, appealed by inmates by following the appeal process as stated in section 3084.1 et seq., and grieved by staff by pursuing grievance procedures in accordance with their collective bargaining unit's contract and/or memorandum of understanding.

3

the regulation provides that movies with a rating other than "G," "PG," or "PG-13" *"shall not*

be approved for general inmate viewing," and provides that after a review such movies may

be allowed for "specified limited inmate viewing purposes (e.g., education or contracted

service vendor programs)." *Id.* at § 3220.4(d)(2) (emphasis added).

      The regulation flatly bans R-rated movies for general inmate viewing. A plaintiff

alleging the existence of such a ban outside of the prison system, in free society, clearly

would state a First Amendment claim -- if, for instance, the State of California were to try to

prevent the viewing of non-obscene R-rated films by the general public. However, in the

prison context the analysis is controlled by *Turner v. Safley*, 482 U.S. 78 (1987), in which

the Court held that  regulations that infringe a prisoner's constitutional right are valid so long

as they are "reasonably related to legitimate penological interests." *Id.* at 89. The

application of the *Turner* analysis to First Amendment claims was approved in *Thornburgh*

*v. Abbott*, 490 U.S. 401, 413 (1989), and the Court has subsequently said, "*Turner* provides

the test for evaluating prisoners' First Amendment challenges... ." *Shaw v. Murphy*, 532 U.

---

(d) At the discretion of the director, a movie/video review shall be done by the movie review committee, composed of staff named by the director. Movies may be submitted for consideration as follows:

    (1) Movies/videos which have not been rated may be submitted to the director for the committee's consideration for general inmate viewing.

    (2) Movies/videos which have an MPAA rating of other than "G," "PG," or "PG-13," or have not been rated by the MPAA, may be submitted to the director by the facility reviewer or a contract vendor for the committee's consideration for specified limited inmate viewing purposes (e.g., education or contracted service vendor programs).

    (3) Movies which are challenged by the public, appealed by inmates, and grieved by staff pursuant to subsection (c) of this section shall be reviewed by the committee at the director's discretion.

(e) The committee may determine a movie/video to be unacceptable for inmate viewing, acceptable for general inmate viewing, or acceptable for specified limited inmate viewing purposes.

(f) The committee will place movies/videos on a statewide "discretionary showing list" under the category of "approved for all purposes," or under the category of "approved for specified limited inmate viewing purposes" (specifying the limited or special purpose for which the movie is being approved), or under the category of "unacceptable for inmate viewing." A movie/video's placement on the list as approved will not require that it be shown by a facility.

**United States District Court**
For the Northern District of California

S. 223, 230 (2001).

Crucially for the result here, the legitimate penological interest may not be presumed. "To satisfy *Turner*, the [defendant] must, at the very least, adduce some penological reason for its policy at the relevant stage of the judicial proceedings. '[C]onsiderations advanced to support a restrictive policy [must] be . . . sufficiently articulated to permit . . . meaningful review.' Thus, at a minimum, the reasons must be urged in the district court." *Armstrong v. Davis*, 275 F.3d 849, 874 (9th Cir. 2001) (quoting *Walker v. Sumner*, 917 F.2d 382, 386 (9th Cir. 1990)). This means that it is not possible to tell on a motion to dismiss, where the court has only the complaint before it, whether plaintiff's claim will survive the *Turner* analysis, because the defendants' proposed "legitimate penological interest" is unknown. For that reason, this ground for the motion to dismiss is without merit.

### 2. Standing

Defendants also contend that the complaint should be dismissed because plaintiff has not pleaded sufficient facts to show standing. Although standing has both constitutional and prudential elements, *Estate of McKinney v. United States*, 71 F.3d 779, 782 (9th Cir. 1995), because plaintiff has failed to meet the constitutional standing requirement the court will not reach the prudential requirement.

The constitutional standing requirement derives from Article III, Section 2 of the United States Constitution, which restricts adjudication in federal courts to "Cases" and "Controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). Article III standing is present only when (1) a plaintiff suffers a concrete, particularized injury which is actual or imminent; (2) there is a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The absence of any one element deprives a plaintiff of Article III standing and requires dismissal. *Whitmore v. Federal Election Comm'n*, 68 F.3d 1212, 1215 (9th Cir. 1995).

1  "Without a concrete, personal injury that is not abstract and that is fairly traceable to

2  the government conduct that [plaintiff] challenges as unconstitutional, [plaintiff] lacks

3  standing." *Cato v. United States*, 70 F.3d 1103, 1109 (9th Cir. 1995) (citation omitted).  No

4  plaintiff has standing "to complain simply that [his] Government is violating the law.*" Allen*

5  *v. Wright*, 468 U.S. 737, 755 (1984).  But when in a suit challenging government action or

6  inaction plaintiff personally was the object of the action (or foregone action) at issue, there

7  "is ordinarily little question" that the plaintiff has suffered injury and that a judgment in his or

8  her favor will redress it. *Lujan*, 504 U.S. at 561-62; *Serrato v. Clark*, 486 F.3d 560, 566-67

9  (9th Cir. 2007) (petitioner has standing to challenge BOP's termination of boot camp

10  because boot camp cancellation created a cognizable and concrete injury in fact that could

11  be redressed by the court by reducing petitioner's continuing period of supervised release).

12      The burden of establishing constitutional standing rests with the party invoking

13  federal jurisdiction. *Lujan*, 504 U.S. at 561.

14      In his complaint plaintiff does not allege that he wishes to see R-rated movies, that

15  he has been prevented from seeing them by the regulation, that defendants were

16  responsible for creating or implementing the regulation, and that he will continue to be

17  prevented from seeing R-rated movies in the future because of the regulation.  Although it

18  may seem unlikely that these things are not true, it is not entirely impossible that plaintiff

19  simply has a generalized interest in vindicating First Amendment rights and so is attacking

20  the regulation in the abstract, which is what the standing doctrine is intended to prevent.

21  The motion to dismiss will be granted on this ground, and the complaint will be dismissed

22  with leave to amend to remedy the deficiency.

23      **3. Ripeness**

24      Defendants also contend that the complaint should be dismissed because the claim

25  is not yet ripe for decision.  "The ripeness doctrine prevents courts, through avoidance of

26  premature adjudication, from entanglement in theoretical or abstract disagreements that do

27  not yet have a concrete impact on the parties." *18 Unnamed "John Smith" Prisoners v.*

28  *Meese*, 871 F.2d 881, 883 (9th Cir. 1989).  The constitutional component of ripeness is

often treated under the rubric of standing, and often "coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). Indeed, ripeness may be characterized as "standing on a timeline." *Id.*

In the absence of allegations in the complaint that plaintiff has been personally affected by the regulation or will be directly affected by it in the imminent future, plaintiff has failed to show ripeness. The motion to dismiss will be granted for this reason as well.

### CONCLUSION

1. Defendants' motion to strike (document number 15 on the docket) and their motion to dismiss (document number 10) are **GRANTED**. The complaint is **DISMISSED** with leave to amend within thirty days to remedy the standing and ripeness defects.

2. If an amendment is not filed the case will be dismissed without further leave to amend. If an amendment is filed, defendants shall file a dispositive motion within thirty days of the date the amended complaint is served upon them, without further order from the court. Plaintiff's opposition, if any, is due thirty days from the date the dispositive motion is served, and defendants' reply, if any, is due fourteen days from the date the opposition is served upon them. The motion will then be taken under consideration without oral argument.

**IT IS SO ORDERED.**

Dated: March 13, 2008.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.06\VANHOOK148.MDISMISS.wpd